## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TYRONE D. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 15-cv-421-CVE-TLW |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Tyrone D. Johnson seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **AFFIRMED**.

### ISSUES

On appeal, plaintiff raises three points of error. First, plaintiff argues that the vocational expert's testimony is insufficient, in this case, to qualify as substantial evidence to support the ALJ's decision. (Dkt. 13). Second, plaintiff argues that the ALJ had a duty to develop the record by obtaining the opinion of an ophthalmologist to explain how the medical findings translated to functional limitations. Id. Third, plaintiff contends that the ALJ failed to make proper credibility findings. Id.

---

[1] Effective January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

## STANDARD OF REVIEW

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his or her alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 34-year old male, filed for Title II benefits in January 2011, alleging a disability onset date of April 23, 2009. (R. 105-06). Plaintiff's date last insured was December 31, 2010. (R. 107). Plaintiff claimed that he was unable to work due to weakness, hemorrhaging, glaucoma, depression, blindness, mood disorder, cataract, and migraines. (R. 121). Plaintiff's claims for benefits were denied initially on June 15, 2011, and on reconsideration on October 10, 2011. (R. 48-55). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held a hearing on September 25, 2012. (R. 23-47). The ALJ issued a decision on October 12, 2012, denying benefits. (R. 10-22). The Appeals Council denied review, and plaintiff appealed. (R. 1-3; dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff's date last insured, for purposes of his Title II claim, was December 31, 2010. (R. 15). The ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged amended disability onset date of April 23, 2009. Id. Plaintiff has severe impairments of "glaucoma; bilateral cataracts; and status post vitrectomy of the left eye." Id. Plaintiff was diagnosed following a vocational rehabilitation exam in October 2009 and underwent surgery in December 2009. Id. The ALJ found that plaintiff's claims of depression associated with his vision impairments was a medically non-determinable impairment because there was no record evidence to support a diagnosis of depression prior to plaintiff's date last insured. Id. Plaintiff's impairments did not meet or medically equal a listing. (R. 16).

The ALJ then reviewed plaintiff's testimony and the medical evidence. Plaintiff testified that he was not currently under the care of a doctor. Id. Plaintiff stated that he experiences blurry vision, poor night vision, headaches, migraines from squinting to see clearly, issues with balance, and trouble walking in new environments.[2] Id. Plaintiff stated that he can see distances, but he cannot drive or watch television. Id. He also cited dry eye as a side effect of his medications. Id.

In August 2009, plaintiff reported that he had not used eye drops for two years. (R. 17). In November 2009, Dr. Phillip Cook performed an eye examination. Id. Dr. Cook was able to correct plaintiff's vision to 20/20 in the right eye and 20/60 in the left eye and recommended glasses. Id. The following month, plaintiff underwent surgery. Id. Plaintiff did not follow up with Dr. Cook, but he did follow up with his surgeon in March 2010. Id. Plaintiff did not receive any further treatment through his date last insured. Id.

---

[2] For clarity, plaintiff's description of balance issues and difficulty walking in unfamiliar environments indicates difficulty with depth perception. (R. 33).

Following his date last insured, plaintiff did not seek additional treatment until October 2011. Id. The ALJ found that this gap in the treatment history was evidence that plaintiff's impairments were not as severe as he claimed. Id. Additionally, plaintiff completed a function report in April 2011 that showed only marginal limitations in plaintiff's activities of daily living. Id. The ALJ also noted that plaintiff's treating physicians did not impose any functional limitations. Id.

The agency physicians who reviewed plaintiff's records found insufficient evidence to establish an impairment. Id. The ALJ gave little weight to these opinions, finding that the medical records clearly established visual limitations prior to plaintiff's date last insured. Id.

Based on this evidence, the ALJ concluded that plaintiff retained the residual functional capacity to perform work at all exertional levels with the following limitation: "[h]e had visual limitations of best corrected vision of 20/20 in the right eye and 20/60 in the left eye." (R. 16). Plaintiff could not perform his past relevant work. (R. 17). Relying on the testimony of the vocational expert, the ALJ found that plaintiff could perform other work. (R. 18). Representative jobs included dishwasher (DOT # 318.687-010); hand packager (DOT # 920.587-010); arcade attendant (DOT # 342.667-014); cafeteria attendant (DOT # 311.677-010); clerical mailer (DOT # 209.587-010); and table worker (DOT #739.687-182). (R. 19). Accordingly, the ALJ found plaintiff not disabled. Id.

## ANALYSIS

### The ALJ's Evaluation of the Vocational Expert's Testimony

Plaintiff argues that the vocational expert's testimony, in this case, does not meet the standard for substantial evidence to support the ALJ's decision, due, in large part, to the ALJ's analysis. (Dkt. 13).

**Step Four – Past Relevant Work**

Plaintiff argues that the ALJ found the vocational expert's testimony unreliable at step four because, in contradiction to the vocational expert's testimony that plaintiff could perform some of his past relevant work, the ALJ found that plaintiff could not perform any of his past relevant work. Id. Plaintiff contends that the ALJ then adopted the vocational expert's testimony at step five without explaining why he rejected some of the testimony but accepted other portions.[3] Id.

In his decision, the ALJ stated that "[t]he claimant had past relevant work as an usher, general laborer, janitor, and truck driver. The vocational expert testified that the claimant's past work was unskilled and semi-skilled, and classified as light to medium in exertion. Accordingly, the claimant was unable to perform past his [sic] relevant work." (R. 17-18). Nothing in that statement explains why the ALJ reached the conclusion that plaintiff could not perform his past relevant work. However, nothing in that statement indicates, as plaintiff argues, that the ALJ found the vocational expert's testimony not credible. To the contrary, the ALJ clearly accepted the vocational expert's testimony regarding the skill and exertional levels of plaintiff's past relevant work and went on, at step five, to accept the vocational expert's testimony regarding other work. (R. 17-19). It seems more likely that the ALJ either misunderstood the vocational expert's testimony or made a scrivener's error in drafting the decision. Regardless, any error at step four is harmless because the ALJ continued to step five. See Murrell v. Shalala, 43 F.3d 1388, 1389 (10th Cir. 1994) (holding that alternate step four and step five analyses are not only proper, they are

---

[3] Plaintiff also challenges the vocational expert's testimony that the jobs he cited also complied with the DOT's definitions of near and far acuity as proof that the vocational expert's testimony is not reliable and, therefore, not substantial evidence to support the ALJ's decision. (Dkt. 13). That issue is discussed in more detail, *infra*. However, this argument has no merit in the context of plaintiff's challenge to the vocational expert's reliability for the reasons discussed *supra*.

favored for multiple reasons, including the possibility that an error at step four may be corrected by a proper step five finding).

**The ALJ's Hypothetical and Step Five Findings**

Plaintiff also takes issue with the ALJ's hypothetical to the vocational expert and the vocational expert's response. Id. Plaintiff argues that the ALJ failed to express her visual limitations in functional terms, giving the vocational expert only the medical results of plaintiff's vision testing. Id. Plaintiff argues that this error led the vocational expert to define the visual requirements of particular jobs using his own definition, rather than the definition set forth by the agency. Id. Plaintiff contends that the resulting opinion deviates from the Dictionary of Occupational Titles ("DOT") and that the vocational expert's testimony regarding other work misstates the requirements of the jobs he cited. Id. Plaintiff also argues that the hypothetical and RFC failed to include limitations that ordinarily are included in cases involving visually-impaired claimants, such as depth perception and field of vision. Id.

<u>Use of Medical Terminology vs. Functional Limitations</u>

The ALJ's hypothetical to the vocational expert expressed plaintiff's visual limitations by reciting the results of plaintiff's medical examination: best corrected vision of 20/20 in the right eye and 20/60 in the left eye. (R. 42). The ALJ also added that "obviously" plaintiff would need glasses. (R. 42). Similarly, the ALJ's decision discusses plaintiff's vision impairments, including Dr. Cook's recommendation for glasses, and the ALJ's RFC findings include a specific limitation for corrected vision. (R. 16, 17). Further questioning from plaintiff's attorney revealed that the vocational expert interpreted that limitation as imposing restrictions on both near and far visual acuity. (R. 45-46). The vocational expert testified that his definitions of near and far acuity varied from the DOT, but that based on his extensive experience placing visually-impaired people in jobs,

the more important criteria was "useful vision." (R. 45-46). He also stated that he believed the jobs he cited did not require near or far acuity, as defined by the DOT.

20 C.F.R. 404.1545 and SSR 96-8p discuss the ALJ's duty to assess a claimant's RFC in terms of functional limitations. SSR 96-8p specifically discusses how the ALJ must assess those limitations:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

> ***

> As with exertional capacity, nonexertional capacity must be expressed in terms of work- related functions. For example, in assessing RFC for an individual with a visual impairment, the adjudicator must consider the individual's residual capacity to perform such work-related functions as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace.

SSR 96-8p. In this case, the ALJ satisfied his duty to assess the functional limitations. He expressed to the vocational expert plaintiff's need to wear glasses based on the results of his medical examination, and the vocational expert properly interpreted that limitation to mean that plaintiff should not perform jobs that require either near or far acuity. (R. 42, 44-45).

To the extent that plaintiff objects solely to the use of medical terminology as a substitute for functional limitation in the RFC findings, the undersigned also finds no error. In part, this conclusion is based on the undersigned's analysis that the ALJ satisfied his duty to assess plaintiff's limitation on a function-by-function basis, as required by 20 C.F.R. § 404.1545 and SSR 96-8p. See also Robinson v. Colvin, 2016 WL 853797 (W.D. Okla. January 26, 2016) (unpublished) (holding that the term monocular vision in the RFC and hypothetical to the vocational expert was sufficient, based on the record to identify the claimant's functional limitations). The undersigned is also persuaded by Nelson v. Colvin, 2015 WL 5231131 (W.D.

Okla. September 8, 2015) (unpublished), which found that it is permissible to express visual limitations using the Snellen fractions that measure visual acuity (i.e. 20/20) rather than using the DOT's terminology for near and far acuity as long as the record clearly demonstrates that the vocational expert understood the limitations.

Step Five Findings

Plaintiff argues that the ALJ erred in accepting the vocational expert's testimony because it deviated from the DOT requirements for near and far acuity. (Dkt. 13). Plaintiff also argues that he cannot perform two of the six jobs cited by the vocational expert because the DOT states that those jobs require frequent near acuity. Id.

In making a step five determination, the ALJ has the discretion to use either the DOT or the testimony of a vocational expert to determine whether a claimant can perform other jobs existing in significant numbers in the economy. See 20 C.F.R. § 404.1566(d) and (e). Social Security Ruling 00-4p sets forth an ALJ's duty to address conflicts between a vocational expert's testimony and the DOT as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-04p. At the hearing, the vocational expert volunteered the testimony that his definition of near and far acuity, insofar as he compared plaintiff's visual limitation to other work plaintiff could

9

perform, did deviate from the DOT.[4] (R. 45-46). The vocational expert also testified that he had significant experience placing visually-impaired people into jobs. Id. Such an explanation, had the ALJ adopted it, would justify the ALJ's acceptance of the vocational expert's testimony, despite the conflict with the DOT.

However, the ALJ did not adopt the vocational expert's explanation regarding the deviation, instead finding that the vocational expert's testimony complied with the DOT. (R. 18). There is evidence in the vocational expert's testimony to support this conclusion. Upon questioning by plaintiff's attorney, the vocational expert explained that despite the difference between his and the DOT's definitions of near and far acuity, the jobs that he cited were consistent with the DOT because they did not require either near of far acuity. (R. 45-46). Accordingly, the ALJ satisfied his duty with respect to the basis for the vocational expert's testimony.

Plaintiff also challenges the ALJ's finding that plaintiff could perform the other work cited by the vocational expert. (Dkt. 13). Plaintiff argues that the job of clerical mailer requires constant near acuity and the jobs of table worker and hand packager require frequent near acuity. Id. Plaintiff contends that, because he cannot perform these two jobs, the ALJ committed reversible error at step five. Id.

In addition to the jobs of clerical mailer, table worker, and hand packager, the ALJ found that plaintiff could perform the jobs of dishwasher (195,000 nationally), arcade attendant (129,775 nationally), and cafeteria attendant (167,500 nationally). According to the SCO, near and far acuity

---

[4] The vocational expert testified that he defined near acuity as eighteen inches or less and far acuity as more than eighteen inches. (R. 44). The Selected Characteristics of Occupations ("SCO") publication, recognized by the Commissioner as an authoritative source, defines near acuity as twenty inches or less and far acuity as twenty feet or more. See https://www.nosscr.org/sco/sco-ocr.pdf, Appendix C (last visited January 12, 2017). The SCO states that "[t]here is no Physical Demand component for rating clarity of vision in the middle distance of 20 inches to 20 feet." See id. The vocational expert's definition of near acuity is very close to the SCO, but the true difference between the vocational expert's opinion and the SCO/DOT is the evaluation of far acuity.

are not physical demands of these jobs. See https://www.nosscr.org/sco/sco-ocr.pdf (last visited on January 12, 2017). Accordingly, there are a significant number of jobs in the national economy that plaintiff can perform. See Stokes v. Astrue, 274 F. App'x 865, 874 (10th Cir. 2008) (holding that 152,000 jobs qualified as a significant number of jobs and that no reasonable factfinder would find otherwise). Accordingly, the ALJ's error in naming three jobs that plaintiff cannot perform is harmless error because plaintiff can perform the three other jobs cited in the ALJ's decision. See Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009) (holding that where the vocational expert described two jobs that exceeded the claimant's physical capacity as defined by the ALJ, the error was harmless because the third job existed in significant numbers to satisfy the ALJ's duty).

**Duty to Develop the Record**

Plaintiff argues that the ALJ had a duty to develop the record by seeking a consultation with an ophthalmologist. (Dkt. 13). Plaintiff bases this argument on the fact that the agency physicians who reviewed the medical records found the evidence insufficient. Id.

It is not clear whether plaintiff is arguing that the ALJ should have ordered a consultative examination with an ophthalmologist or that the ALJ should have sought the testimony of an ophthalmologist at the hearing. Either way, the ALJ did not need this additional evidence in order to assess plaintiff's RFC.

A claimant's RFC is an administrative determination, and "the final responsibility for deciding [this] issue[] is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). See also 20 C.F.R. § 404.1520(e) and SSR 96-5p. Moreover, the regulations, do not require "a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record," the Tenth

Circuit has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).

With respect to the question of consultative examinations, the ALJ has "broad latitude in ordering consultative examinations." Hawkins v. Chater, 113 F.2d 1162, 1166 (10th Cir. 1997). Nonetheless, Hawkins, citing the applicable regulations and other case law, holds that, despite the ALJ's discretion, a consultative examination must be ordered in three instances:

"where there is a direct conflict in the medical evidence requiring resolution;"

"where the medical evidence in the record is inconclusive;" or

"where additional tests are required to explain a diagnosis already contained in the record." Id. (citations omitted). Hawkins notes that "[t]he difficult cases are those where there is some evidence in the record or some allegation by a claimant of a possibly disabling condition, but that evidence, by itself, is less than compelling." Id. at 1167. In that situation, "the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." Id.

Accordingly, the decision to order a consultative examination depends on the facts of the case, and "the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing." See Harlan v. Astrue, 510 F. App'x 708, 712 (10th Cir. 2013) (unpublished). See also Lundgren v. Colvin, 512 F. App'x 875, 878-79 (10th Cir. 2013) (unpublished) (noting the ruling in Harlan and reiterating its statement that the appropriate inquiry is whether the record was sufficiently developed). When a plaintiff does not request a consultative examination, the ALJ is not required to order one unless the need for the examination is "clearly established by the record." Hawkins, 113 F.3d at 1168.

The ALJ also has discretion to seek medical expert testimony at a hearing. See 20 C.F.R.

§ 404.1527(e)(2)(iii).

The ALJ rejected the agency physician's opinions in favor of the opinions of plaintiff's

treating physicians. The ALJ adopted Dr. Cook's finding from October 2009 that plaintiff's best

corrected vision (with glasses) was 20/20 in the right eye and 20/60 in the left eye. (R. 17). The

ALJ also accepted Dr. Townsend's opinion that plaintiff required vitrectomy of the left eye in

December 2009. Id. Plaintiff argues that the ALJ erred in accepting Dr. Cook's opinion over Dr.

Townsend's opinion. (Dkt. 13). However, in reviewing the medical records, the undersigned finds

that plaintiff's argument misrepresents the substance of the medical records.

Dr. Cook and Dr. Townsend treated plaintiff for the same conditions. Dr. Cook diagnosed

plaintiff with glaucoma and macular pucker in the left eye in October 2009. (R 178). He

recommended glasses based on the recommendation of two other physicians (whose treatment

notes are not included in the record) that plaintiff did not need surgery. (R. 180). Plaintiff sought

a second opinion from Dr. Townsend in December 2009, and Dr. Townsend recommended surgery

for the macular pucker, which he called preretinal membrane. (R. 185-87). Dr. Townsend's

treatment notes indicate that plaintiff was seeing 20/40 in his left eye one-day post-op, and 20/30

in March 2010, approximately three months after surgery. (R. 182-83). The March 2010 follow-

up with Dr. Townsend was plaintiff's last appointment before his date last insured, and plaintiff

never followed up with Dr. Cook.

Accordingly, all of the medical evidence points to the conclusion that plaintiff's visual

impairment improved with treatment, initially with glasses and additionally with surgery. There is

no ambiguity in the medical record and no reason to believe that additional information would

have assisted the ALJ. While there is a conflict in the recommendations of Dr. Cook and Dr.

Townsend, plaintiff resolved the conflict by having surgery, which improved his vision even more

than the glasses did. There is also no indication that additional testing is needed. In fact, the ALJ's reliance on Dr. Cook's opinion gave plaintiff the benefit of the doubt.

Plaintiff's argument that the ALJ should have imposed additional visual limitation regarding depth perception and field of vision is not persuasive. Other than plaintiff's testimony at the hearing, there is no evidence that plaintiff suffered any visual limitation other than acuity. In fact, Dr. Cook's opinion states that plaintiff has a full field of vision with glasses. (R. 177-80).

The ALJ did not err in failing to order a consultative examination or to call a medical expert to present testimony at the hearing.

**Credibility**

Plaintiff argues that the ALJ's credibility analysis relies too heavily on activities of daily living, fails to address all of plaintiff's symptoms, and penalizes plaintiff for not being able to afford treatment. (Dkt. 13).

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ discussed plaintiff's testimony on his activities of daily living in detail and then contrasted them with plaintiff's own function report from April 2011, which indicated that his visual impairment had minimal impact on those activities of daily living. (R. 17). Thus, the ALJ was not relying on plaintiff's activities of daily living but on the inconsistencies in plaintiff's statements. The ALJ also relied on the objective medical evidence and plaintiff's treatment history, which was sporadic and included a large gap following plaintiff's surgery in December 2009. (R. 17).

As discussed *supra*, the ALJ included all of the limitations borne out by the medical evidence in assessing plaintiff's RFC. The ALJ also did not fail to consider whether plaintiff failed to receive treatment for financial reasons because the record does not include any evidence that the claim is true for the time period plaintiff cites. Plaintiff references a brief delay in treatment with Dr. Mark Weiss, who examined plaintiff in August 2009. (R. 173). Plaintiff's treatment notes state that a follow-up appointment set for October 2009 was denied because "no case was in place," but plaintiff was able to return to Dr. Weiss in November 2009. (R. 173-174). Plaintiff also cites treatment that plaintiff received in January 2012, well after his date last insured, in which the physician's office asks for a copy of the authorization. (R. 244). However, that same physician also noted in March 2012 that plaintiff "is known not to keep his appointments" and had been warned of being charged with a no-show fee if he continued to miss appointments. (R. 242). The ALJ did not discuss this evidence, likely because it was created long after his date last insured, but it is consistent with the ALJ's credibility analysis regarding plaintiff's spotty treatment history.

Accordingly, the undersigned finds that the ALJ conducted a proper credibility analysis.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

**OBJECTION**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by February 21, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 6th day of February, 2017.

_____
T. Lane Wilson
United States Magistrate Judge