## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

TYRONE D. JOHNSON,                        )
                                          )
                Plaintiff,                )
                                          )
v.                                        )          Case No. 15-CV-0421-CVE-TLW
                                          )
NANCY BERRYHILL,                          )
Acting Commissioner of                    )
Social Security,                          )
                                          )
                Defendant.                )

## OPINION AND ORDER

Now before the Court is the report and recommendation (Dkt. # 18) of Magistrate Judge T. Lane Wilson recommending that the Court affirm defendant's decision to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection (Dkt. # 19) to the report and recommendation and an errata (Dkt. # 20), and he asks the Court to reverse the defendant's decision and remand the case for further administrative proceedings. The time to file a response to plaintiff's objection has expired, and defendant has not filed a response.

## I.

On January 1, 2011, plaintiff filed an application for Title II disability benefits, and he alleged a date of onset of disability of April 23, 2009. Dkt. # 12, at 108. Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Dkt. # 12, at 51-55, 67-70.

A hearing was held on September 25, 2012, and plaintiff was represented by counsel at the hearing. The ALJ clarified that the only application at issue was a Title II application for disability benefits and plaintiff's counsel understood that the date last insured was a significant issue. Id. at 29. Plaintiff's counsel stated that the date last insured was December 31, 2010. Id. Plaintiff was

38 years old at the time of the hearing and he had completed the 11th grade. Id. at 30-31. Plaintiff had formerly worked as a commercial truck driver, but he began to experience problems with his vision and could no longer drive. Id. at 32. Plaintiff sought treatment for his vision problems and he was diagnosed with glaucoma. Id. at 34. Plaintiff lost much of his peripheral vision, he had two surgeries on his left eye, and he testified that his right eye is deteriorating. Id. at 35-36. He suffers from headaches when he goes into public, and he has difficulty performing household chores and activities due to his vision problems. Id. at 39-40. The ALJ called a vocational expert (VE) to testify. The ALJ posed a hypothetical question to VE as to whether a hypothetical claimant, who could perform the full range of sedentary, light, and medium work with 20/20 vision in his right eye and 20/60 vision in his left eye with corrective lenses, could perform some of plaintiff's past relevant work. Id. at 44-45. The VE testified that the hypothetical claimant could perform some of plaintiff's past relevant work, and could also work as a dishwasher, hand packer, arcade attendant, cafeteria attendant, clerical mailer, addresser, and table worker. Id. at 46-47. The ALJ asked the VE to assume that the hypothetical claimant had the same limitations and that plaintiff's testimony was fully credible, and the VE testified that the hypothetical claimant could not perform any job due to the lack of useful vision. Id. at 48. Upon questioning by plaintiff's counsel, the VE explained that he deviates from the Dictionary of Occupational Titles (DOT) on vision restrictions, because he has actual experience placing persons who are blind or visually impaired into jobs and he finds that "useful vision" is better indication of a person's ability to work than the concepts of near and far visual acuity used by the DOT. Id. The VE further testified that the DOT does not place restrictions on near and far visual acuity. Id. at 49.

On October 12, 2012, the ALJ issued a written decision denying plaintiff's claim for disability benefits.  Plaintiff met the insured status requirement until December 31, 2010, and he alleged onset of disability as of April 23, 2009.  Id. at 18.  Plaintiff had the severe impairments of glaucoma, bilateral cataracts, and status post vitrectomy of the left eye, but the ALJ did not find that plaintiff had any mental impairments.  Id.  No impairment or combination of impairments rose to the level to the level of a listed impairment under 20 CFR Part 404, Subpart P, Appendix 1.  Id. at 19.  The ALJ found that plaintiff had the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations:  He had visual limitations of best corrected vision of 20/20 in the right eye and 20/60 in the left eye.

Id.  The medical evidence showed that plaintiff had an eye examination on November 20, 2009 and had 20/20 vision in his right eye and 20/60 vision in his left eye with corrective lenses.  Id. at 20. Plaintiff had surgery to repair a peeling membrane on his left eye, but he did not seek treatment for vision problems from March 2010 to October 2011.  Id.  The ALJ found that the medical evidence did not support plaintiff's testimony concerning the severity of his vision problems, and he determined that plaintiff was only marginally limited in the performance of daily activities.  Id. Plaintiff was unable to return to his past relevant work as an usher, general laborer, janitor, or truck driver, but there were jobs available in sufficient numbers in the national economy that plaintiff could perform with his RFC.  Id. at 21.  The ALJ determined that the VE's testimony was "consistent with the information contained in the [DOT], and plaintiff could work as a dishwasher, hand packager, arcade attendant, cafeteria attendant, clerical worker, and table worker.  Id.  Thus, plaintiff was found not disabled at step five.

Plaintiff sought review of the denial of his claim for disability benefits by the Appeals Council, but the Appeals Council found no basis to review the ALJ's decision. Id. at 4-6. On July 28, 2015, plaintiff filed this case seeking judicial review of the ALJ's decision, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommends that the Court affirm defendant's decision to deny plaintiff's claim for disability benefits. Dkt. # 18.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

## III.

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." Id. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. See 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." Allen, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him]

4

from performing [his] past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether [he] possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis, finding that sufficient jobs existed in the national economy to allow plaintiff to work. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**A.**

Plaintiff claims that the ALJ had a duty to develop the record by obtaining an "opinion" from an opthalmologist as to functional limitations related to plaintiff's decreased vision.  Dkt. # 19, at 2.  The magistrate judge recommends a finding that there was no ambiguity in the medical evidence as to plaintiff's visual limitations, and there was no need for additional testing or an opinion from an opthalmalogist.  Dkt. # 18, at 14.

The Tenth Circuit has noted that an ALJ may order a consultative examination, but the ALJ "has broad latitude in ordering consultative examinations.  Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).  A consultative examination may be required when there is a direct conflict in the medical evidence that cannot be resolved by the ALJ, where the medical evidence is inconclusive, or if additional testing is required to explain a diagnosis in the record.  Id.  When a claimant is represented by counsel at a hearing before an ALJ, the ALJ may rely on the claimant's attorney to identify issues that require further development, and a reviewing court may consider the lack of a request by counsel for additional examination as a factor when presented with a claim that the ALJ failed to fully develop the administrative record.  Cowan v. Astrue, 552 F.3d 1182, 1187-88 (10th Cir. 2008).

Plaintiff argues that there is no medical evidence from an opthalmologist as to any functional limitations caused by his vision problems, and the ALJ had a duty to develop the record by obtaining an opinion from an opthalmologist.  The magistrate judge noted that plaintiff fails to specify whether he is asking for a consultative examination with an opthalmologist or the testimony of an impartial medical expert, and plaintiff's objection to the report and recommendation offers no clarification on this issue.  Dkt. # 18, at 11.  Plaintiff's failure to fully explain the relief sought is a sufficient

reason to reject his argument, because the Court cannot determine what specific error allegedly requires remand of the case.  Even if the Court were to assume that plaintiff was asking for a consultative examination, the ALJ did not err by failing to order a consultative examination in this case.  The ALJ rejected findings by two physicians from a state agency that the medical evidence in support of plaintiff's application for disability benefits was inconclusive.  See Dkt. # 12, at 20. Instead, the ALJ considered the opinions of plaintiff's treating physicians, and he found that plaintiff's vision could be corrected by wearing glasses and that plaintiff did not seek treatment for vision problems from March 2010 to October 2011.  Plaintiff cites medical evidence that his vision began to deteriorate in October 2011, but this evidence post-dates his date last insured of December 31, 2010 and it does not contradict the ALJ's findings concerning the medical evidence from the relevant time period.  The medical evidence in this case was not ambiguous or inconclusive as to plaintiff's visual limitations before December 31, 2010, and the ALJ was not required to order a consultative examination with an opthalmologist.

**B.**

Plaintiff claims that the ALJ's credibility analysis is flawed, because the ALJ significantly overstated plaintiff's ability to perform activities of daily life. Dkt. # 19, at 4.  The magistrate judge recommends that plaintiff's challenge to the ALJ's credibility findings be rejected, because plaintiff's argument is not based on evidence preceding the date last insured and the ALJ adequately linked his credibility findings to the relevant medical evidence.  Dkt. # 18, at 15.

"Credibility determinations are peculiarly the province of the finder of fact," and such determinations are not to be upset "when supported by substantial evidence."  Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  Nonetheless, "[f]indings as to

credibility should be closely and affirmatively linked to substantial evidence." Hutson v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).  Factors an ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hutson, 838 F.2d at 1132.  An ALJ must look beyond objective medical evidence in evaluating claims of disabling pain. Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).  An ALJ must give specific reasons for his findings and such findings must be closely linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995).  However, an ALJ does not need to provide a "formalistic factor-by-factor review of the evidence"; an ALJ needs only to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  Common sense should guide the review of an ALJ's credibility determination and technical perfection is not required.  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

Plaintiff argues that the ALJ erred when he found that plaintiff was only "marginally limited" in the performance of daily activities.  Plaintiff testified that he has difficulty preparing meals and performing household chores due to problems with depth perception. Dkt. # 12, at 37, 40.  Plaintiff completed a function report describing his disability and how it affects his daily life, and he stated that he performs some household chores.  Id. at 143.  However, he claimed that he often had food brought to him by a friend because it took him so long to prepare a meal.  Id.  Plaintiff states that he no longer drives a car due to a lack of peripheral vision, and he often feels depressed and irritable

8

due to his vision problems.  Id. at 145.  The function report was prepared on April 5, 2011.  Id. at

148.  The ALJ did not discount the function report and he specifically reviewed the function report

in his written decision, even though he noted that the function report was prepared four months after

the date last insured.  Id. at 20.  The ALJ also considered plaintiff's testimony and considered

plaintiff's statement that he no longer drives and that he has trouble cooking.  Id. at 19.  The Court

has reviewed the ALJ's credibility analysis and finds no basis to remand the case.  The ALJ

considered plaintiff's testimony and function report in light of medical evidence from the relevant

time period, and found that the objective medical evidence did not corroborate plaintiff's claims

concerning the severity of his vision problems.  Id. at 20.  The ALJ's credibility findings are

supported by substantial evidence, and the ALJ's findings are not undermined by his failure to

discuss medical records significantly post-dating the date last insured.

## C.

Plaintiff argues that the ALJ improperly relied on the testimony of the VE in making his

findings at step five, because the VE's testimony was inconsistent with the DOT and plaintiff could

not actually perform five of the six jobs identified in the ALJ's written decision.  Dkt. # 19, at 1-2.

The magistrate judge recommends that the ALJ's step five finding be affirmed, because three of the

jobs identified by the VE did not require near acuity and there is substantial evidence supporting the

ALJ's finding that jobs existed in significant numbers for a person with plaintiff's RFC.  Dkt. # 18,

at 8-11.

The ALJ called a VE to testify at the hearing, and the VE reviewed plaintiff's work history.

The ALJ asked the VE if a hypothetical claimant with 20/20 vision in his right eye and 20/60 vision

in his left eye who could perform a full range of sedentary, light, and medium work could obtain

employment as customarily performed.  Dkt. # 12, at 44-45.  The VE testified that the hypothetical claimant could perform plaintiff's past relevant work as an usher and assembler as listed in the DOT and as performed, and the hypothetical claimant could work as a general laborer, janitor, and truck driver as listed.  Id. at 45.  The hypothetical claimant could also obtain employment as a dishwasher, hand packer, arcade attendant, cafeteria attendant, clerical mailer, addresser, and table worker.  Id. at 46-47.  The ALJ asked to assume that plaintiff's testimony was fully credible, in addition to the limitations of the hypothetical claimant, and the VE testified that the hypothetical claimant could not perform plaintiff's past relevant work or any of the other jobs identified by the VE.  Id. at 47. Upon examination by plaintiff's counsel, the VE explained that he has significant experience placing visually impaired persons into jobs and he deviates from the DOT's treatment of near and far visual acuity.  Id. at 48.  The DOT provides a definition of near and far acuity, but the VE found that it is more realistic to consider "useful vision" when considering job placement.  Id.  The VE testified that all of the jobs he identified could be performed with the hypothetical claimant's useful vision.  The ALJ asked for clarification about any visual limitations imposed by the DOT as to the jobs identified by the VE, and the VE testified that the DOT did not impose any restrictions as to near or far acuity. Id. at 49.

With regard to the step five factor of the number of jobs available that claimant can perform, the Tenth Circuit has emphasized that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation" and, as such, "the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'"  Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992)).  However, the court in Allen also stated

that "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance . . . . Such an approach might have been open to us here had the number of available jobs identified by the VE not been one hundred but considerably greater." Id. at 1145.  For example, in Rogers v. Astrue, 312 F. App'x 138, 141-42 (10th Cir. Feb. 17, 2009), where only one of the four originally proposed occupations had no conflict, the Tenth Circuit panel found that 11,000 positions in the national economy met the requirement for a "significant number" of jobs.[1]  Id. at 141-42.  In Norris v. Barnhart, 197 F. App'x 771, 777 (10th Cir. Sep. 26, 2006), however, the Tenth Circuit found that the two occupations without a conflict, which together totaled approximately 1,600 jobs in the regional economy and 210,000 jobs in the national economy, were not clearly present in "significant number[s]."  Id. at 777.  In Stokes v. Astrue, 274 F. App'x 675 (10th Cir. Apr. 18, 2008), the Tenth Circuit decided that the two jobs for which there was no conflict, together totaling 11,000 jobs regionally and 152,000 jobs nationally, existed in significant numbers, satisfying the step five analysis.  Id. at 684.

Before considering plaintiff's objection, the Court finds that it is necessary to clarify what aspects of the VE's testimony the ALJ actually found credible in his written decision.  The VE testified that plaintiff could return to some of his past relevant work and this could have been a basis to find plaintiff "not disabled" at step four of the analysis.  Dkt. # 12, at 45.  However, the ALJ specifically stated in his written decision that plaintiff was unable to perform his past relevant work, and the ALJ apparently rejected this aspect of the VE's testimony.  Id. at 19-20.  The magistrate judge suggested that this could have been a scrivener's error or that the ALJ misunderstood the VE's

---

[1]     This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value.  See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

testimony, and the magistrate judge proceeded to the ALJ's findings at step five.  Dkt. # 18, at 6.

The Court has reviewed the ALJ's written decision and agrees with the magistrate judge that the

ALJ did not make a finding that the VE's testimony as to plaintiff's RFC to return to his past

relevant work was credible.   The ALJ did find at step five that the VE's testimony was consistent

with the DOT, and the ALJ found that plaintiff could obtain employment as a dishwasher, hand

packager, arcade attendant, cafeteria attendant, clerical mailer, and table worker.  Dkt. # 12, at 21.

The Court will consider whether there is substantial evidence supporting the ALJ's decision that

plaintiff could perform these jobs, and this will include an assessment as to whether the VE's

testimony is consistent with the DOT.

        In considering plaintiff's objection, the Court will make the same assumption as the parties

and the magistrate judge that the visual limitations in the RFC would prevent plaintiff from

performing jobs requiring near or far acuity.  See Dkt. # 16, at 9; Dkt. # 18, at 7-8; Dkt. # 19, at 1-2.

Defendant concedes that five of the six jobs identified in the ALJ's written decision require at least

occasional near acuity, but argues that there are 195,000 jobs available nationally as a dishwasher

such that the Court can affirm the ALJ's step five findings on the availability of this job alone.[2]  Dkt.

# 16, at 9.  Plaintiff does not dispute that the job of dishwasher does not conflict with the RFC, but

---

[2]      The magistrate judge considered the Selected Characteristics of Occupations (SCO), which
        is a companion source to the DOT that was prepared by the United States Department of
        Labor.  See Baker v. Colvin, 2015 WL 5775227, *2 n.2 (N.D. Okla. Sep. 29, 2015).  The
        magistrate judge states that the SCO description of the jobs of arcade attendant or cafeteria
        attendant do not require near or far acuity, and he considered these jobs in recommending
        that jobs existed in sufficient numbers at step five.  Dkt. # 18, at 10.  The Court would likely
        have accepted the magistrate judge's recommendation as to affirming the ALJ's step five
        findings if the jobs of arcade attendant and cafeteria attendant were available to plaintiff.
        However, neither the VE nor the ALJ referenced the SCO and the Court declines to rely on
        the SCO without allowing the ALJ to resolve the apparent conflict between the DOT and
        SCO.

12

he argues that the case should be remanded to the ALJ to decide whether there is a significant number of this job available in national economy for plaintiff to be found not disabled at step five. There are more national positions available than in <u>Rogers</u> and <u>Stokes</u>, but the number of jobs available nationally is somewhat smaller than in <u>Norris</u>.  Given the Tenth Circuit's stated preference that a reviewing court should make a dispositive finding only in an "exceptional circumstance," the Court declines to find that there are a "significant number" of jobs available to plaintiff in the economy. Thus, the ALJ's alternate step five determination that plaintiff is not disabled is in error, as there is not a finding that there is a "significant number" of other work that plaintiff is able to do.

**IT IS THEREFORE ORDERED** that the Report and Recommendation (Dkt. # 18) is **rejected**, and the Commissioner's decision denying plaintiff's application for disability benefits is **reversed** and **remanded**.  A separate judgement is entered herewith.

**DATED** this 8th day of March, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE